UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) | |
| ) | |
| ADAM S. KELLY and ) | Case No. 6:11-bk-05288-KSJ |
| LISA A. KELLY, ) | Chapter 7 |
| ) | |
| Debtor[s]. ) | |
| ) | |
| | |
| ADAM S. KELLY and ) | |
| LISA A. KELLY ) | |
| ) | |
| Plaintiff[s], ) | |
| vs. ) | |
| ) | Adversary No. 6:12-ap-102-KSJ |
| MICHIGAN FINANCE AUTHORITY, ) | |
| NATIONAL COLLEGIATE TRUST (AES) ) | |
| EDUCATIONAL CREDIT ) | |
| MANAGEMENT CORP. and ) | |
| US DEPARTMENT OF EDUCATION ) | |
| ) | |
| Defendant[s]. ) | |
| ) | |

**MEMORANDUM OPINION DENYING**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Adam S. and Lisa A. Kelly filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on April 20, 2012.[1] Plaintiffs then filed an adversary complaint to determine the dischargeability of $161,000 in student loans owed to the Defendants, arguing that repayment of the loans presents undue hardship to them and their dependents, and that the loans should be discharged under 11 U.S.C. § 523(a)(8).[2]

---

[1] Doc. No. 1 Case No. 12-bk-05288-KSJ. All references to the Bankruptcy Code shall be to 11 U.S.C. § 101 *et seq.*
[2] Doc. No. 15 Plaintiffs' Amended Complaint Seeking Determination Pursuant to Bankruptcy Code 523(a)(8) that Requiring the Debtors to Pay their Educational Loans will Work Undue Hardship Upon the Debtors and/or their Dependents.

On September 10, 2012, the Kellys filed a Motion for Summary Judgment on Count I of their Complaint arguing that the $29,373.28 in funds loaned by on particular Defendant, National Collegiate Trust,[3] were not school-certified loans, that they exceeded the "cost of attendance," and therefore they should not be considered nondischargeable "qualified education loans" within the meaning of § 523(a)(8).[4]

Plaintiff Adam Kelly attended the College for Creative Studies from September, 2001 through May, 2005.[5] According to the Director of Financial Aid, the cost of attendance for the academic year from September 2003 to May, 2004 was $30,294.[6] Mr. Kelly applied for and received $10,000 in scholarship funds and financial aid and then received an additional $20,129 from the Michigan Finance Authority for the 2003-2004 academic year.[7] The College of Creative Studies certified these loan amounts.

During the same school year, Mr. Kelly also applied for and received two Education One Undergraduate Loans from the National Collegiate Trust[8] totaling $29,373.28. The total loans of $60,423 Mr. Kelly received during the 2003-2004 academic year exceeded the $30,294 cost of attendance certified by the school.

The Plaintiffs point to certain defined terms in the Bankruptcy Code that any amounts in excess of the certified cost of attending a higher education institution should be discharged in bankruptcy. The term "qualified education loan" in § 523(a)(8)(B) is defined as any debt incurred solely to pay "qualified higher education expenses," which is expressed as the "cost of attendance," less any amounts received from scholarships or other educational assistance programs.[9]

---

[3] National Collegiate Trust is guarantor of the educational loans serviced by the Defendant, American Education Services.
[4] Doc. No. 24.
[5] *Id*. at 3.
[6] Doc. No. 40 Exhibit A.
[7] Doc. No. 24 at 2-4.
[8] Successor in interest to the original lender, Bank One, N.A.  Doc. No. 38 at 5.
[9] 11 U.S.C. § 523(a)(8)(B), by reference to 26 U.S.C. § 221(d)(1).

The Debtors also point to other sections of the United States Code which require colleges to limit financial assistance to the cost of attendance less any estimated merit scholarships.[10] In short, the Debtors argue that the amalgamation of these sections make the loan amounts Mr. Kelly received from National Collegiate Trust dischargeable because they were not "certified" by the college, and therefore could be used for anything, not just educational expenses, because the cost of attendance already was covered by school-backed loans.[11] The Court disagrees.

Unless excepting such debt from discharge under this paragraph would impose an undue hardship, § 523(a)(8) provides that a bankruptcy discharge does not discharge a debtor from debts for:

> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> > (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> 
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

The debts owed to National Collegiate Trust indisputably conferred an educational benefit on Mr. Kelly.[12] The loan agreements Mr. Kelly signed acknowledged that "the requested loan is subject to the limitations in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code."[13] The Debtor, as a "student borrower," signed two Education One Undergraduate Loan agreements promising "the proceeds of [these loans] will be used only for my educational expenses at the School."[14] Regardless of how the Plaintiffs used the loan

---

[10] Section 108711 of the Higher Education Act of 1965 (defining "cost of attendance"); 34 CFR 673.5(b) & (c) (requiring colleges to consider any known or anticipated resources when determining the size of a student's need-based financial aid); Sections 480(j) and 428(a)(2)(C) of the Higher Education Act (defining "resources").

[11] Doc. No. 24 at 6-7.

[12] 11 U.S.C. § 523(a)(8)(A)(ii).

[13] Doc. No. 38 Exhibits A and B, at 4.

[14] Doc. No. 38 Exhibit 1 at Section L(2).

proceeds, the Court need only consider the purpose for which the loan was incurred.[15]  In this case, the clear purpose of the loan was to assist financially the Plaintiffs while Mr. Kelly was in school, regardless of whether the amounts exceeded the actual cost to attend the school.  How the loan proceeds actually were used is irrelevant.

The Plaintiffs do not argue the loans were used for other purposes, but that the debt owed to the Defendant is dischargeable merely because the loan proceeds exceeded the certified cost of Mr. Kelly's attendance. This is not a viable argument.  It is enough that the debt be an "obligation to repay funds received as an educational benefit,"[16]  and the undisputed evidence shows the purpose of these loans was to grant an immediate educational benefit on Mr. Kelly. Moreover, the code sections cited by the Plaintiffs limiting financial awards to the cost of attendance are directed at colleges and universities, not private student loan corporations like the Defendant.

Therefore, the Court finds the Plaintiffs have failed to meet their initial burden of proving they are entitled to judgment as a matter of law.[17] The Motion for Summary Judgment[18] is denied.  A separate order consistent with this memorandum opinion shall be entered.

DONE AND ORDERED in Orlando, Florida, on January 28, 2013.

KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

---

[15] *Salter v. Educational Resources Inst., Inc. (In re Salter)*, 207 B.R. 272, 75 (Bankr. M.D. Fla. 1997); *In re Roberts*, 149 B.R. 547 (C.D. Ill. 1993) (the focus on the exception to discharge for educational loans is on the nature and character of loan, not how recipient actually spent the money); *In re Vretis*, 56 B.R. 156 (Bankr. M.D. Fla. 1985) (Financial assistance given to the debtor through a scholarship program while the debtor was attending osteopathic medicine program was an educational loan under § 523(a)(8), even though the stipend was probably used for rent and living expenses).

[16] *In re Carow,* 2011 WL 802847 at *4 (Bankr. D. N.D. March 2, 2011) (noting § 523(a)(8) was revised by Congress in 2005 to include a broader range of educational benefit obligations).

[17] Federal Rule of Civil Procedure 56 authorizes summary judgment if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact such that it is entitled to summary judgment in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

[18] Doc. No. 24.